FILED

05 MAY 24 AM 10: 44

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KENNETH G. STEEPROW,**

        **Plaintiff,**

-vs-                                    Case No. 6:04-cv-1119-Orl-31KRS

**JEB BUSH, et al.,**

        **Defendants.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND REQUEST FOR JUDICIAL NOTICE (Doc. No. 68)** |
| **FILED:** | **January 18, 2005** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED**. | |

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS AMENDED COMPLAINT ... BY DEFENDANTS JEB BUSH, STATE OF FLORIDA, VINCENT TORPY, GARY BEATTY, LEE TAYLOR, AND RICHARD RIEHL (Doc. No. 69)** |
| **FILED:** | **January 19, 2005** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED**. | |

| MOTION: | MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT BY DEFENDANT BREVARD COUNTY (Doc. No. 71) |
|---|---|
| FILED: | January 21, 2005 |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

| MOTION: | MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT BY DEFENDANTS BREVARD COUNTY SHERIFF'S OFFICE, PHILIP WILLIAMS, AND ANTHONY BRANNON (Doc. No. 78) |
|---|---|
| FILED: | February 7, 2005 |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

I. **PROCEDURAL BACKGROUND.**

The Plaintiff, Kenneth Steeprow, seeks relief from an alleged conspiracy to convict him of a number of crimes and to generally harass him. On July 23, 2004, Steeprow filed a *pro se* complaint against thirteen separate defendants, alleging fifteen civil rights violations and state law torts. Doc. No. 1. Between September 22, 2004, and October 18, 2004, each named defendant (Steeprow also designated defendants named "Jane Doe" and "John Doe") filed a motion to dismiss or, alternatively, for a more definite statement. Doc. Nos. 23-26, 28, 31, 33, 39. Subsequently, Steeprow sought leave to file an amended complaint, which the Court granted. Doc. Nos. 61, 64. Steeprow filed an amended complaint on January 14, 2005. Doc. No. 67.

During January and February 2005, the defendants filed the present motions to dismiss the amended complaint, some of which also sought alternative relief. Doc. Nos. 68, 69, 71, 78. On May 2, 2005, Steeprow filed a response to the motions to dismiss, which basically reiterates his amended complaint. Doc. No. 95.

The present case renews a number of claims Steeprow pursued in an earlier case before this Court. In Case No. 6:00-cv-1175-ORL-31DAB, Steeprow alleged numerous civil rights violations in connection with a crime of which he was convicted. The Court dismissed Steeprow's claims in that action, granting him leave to re-file in the event that his conviction was overturned. In the present case, some of Steeprow's claims are based on the same events as the prior action, while some of his claims are based on subsequent events.

## II.   ALLEGATIONS OF THE COMPLAINT.

Steeprow alleges a conspiracy among state and private actors to deprive him of his rights under the U.S. Constitution, federal statutes, and Florida state law. Doc. No. 67. The dispute in this case began around 1996, when an individual named Nofal Kahook allegedly defrauded Steeprow and his wife of their life savings. Doc. No. 76 ¶ 33. Kahook brought a foreclosure action against Steeprow, which forced Steeprow into bankruptcy. *Id.* ¶ 33. In the midst of a subsequent bankruptcy court proceeding, Vincent Torpy, Kahook's attorney, represented to the bankruptcy court that Steeprow had made violent threats against people involved in that case. *Id.* ¶ 33.

Torpy and Kahook then allegedly threatened to file criminal charges against Steeprow in Brevard County, Florida, because rampant racism in that county's jury pool would surely result in Steeprow's conviction (Steeprow is African-American). *Id.* ¶ 33. Subsequently, Steeprow was

charged with and convicted of "[d]isclosure of an illegal wire tap" with defendant Gary Beatty serving as the prosecuting attorney in that case. *Id.* ¶ 33. The plaintiff claims that Beatty and Torpy conspired to conceal exculpatory evidence from Steeprow in that criminal proceeding. *Id.* ¶ 33. Moreover, Torpy allegedly perjured himself by testifying that the trumped-up charges against Steeprow were, in fact, meritorious. *Id.* ¶ 33.

In addition, Steeprow alleged that he was the subject of a "race hate attack" on October 24, 2000, in which two men placed flyers containing racist comments on his car, called Steeprow a racial epithet, and attacked him physically. *Id.* ¶ 38. Steeprow claims that he observed a police officer, defendant David Fitch, leaving the scene after the fliers were placed on his car. *Id.* ¶ 135. Steeprow alleges that the police, in furtherance of the conspiracy against him, refused to investigate this crime. *Id.*

The attorney from the public defender's office who was appointed to represent Steeprow, defendant Lee Taylor, allegedly conspired with Torpy and Beatty to ensure that Steeprow would be convicted. *Id.* ¶ 33. Based on these allegations, Steeprow sued Torpy and others before this Court in Case No. 6:00-cv-1175-ORL-31DAB for various civil rights violations surrounding his conviction for the wire tap crime. In that case, this Court determined that Steeprow could not sustain his claims attacking the basis for his conviction unless he could show that the criminal proceedings against him had been terminated in his favor. Thus, on September 6, 2001, the Court, adopting the recommendation of Magistrate Judge David A. Baker, dismissed Steeprow's complaint with leave to re-file in the event that Steeprow's conviction was overturned. Steeprow never re-filed his complaint in that action.

At some point, Steeprow allegedly "risked his privacy to report terror activities to the FBI." *Id.* ¶ 126. The FBI ignored his report, and Steeprow was arrested for falsely reporting a crime. *Id.*

On December 6, 2002, Steeprow was arrested for a "sex crime," which consisted of exposure of sexual organs and lewd behavior. *Id.* ¶¶ 34, 79. Immediately after Steeprow's arrest, the officer who arrested him contacted his wife to inform her of the crimes with which he had been charged. *Id.* ¶ 34. The plaintiff alleges that the officer intended to slander Steeprow, the state never intended to file charges against him, and his arrest was merely for the sake of harassment. *Id.* ¶ 34. However, once the arrest had taken place, the State filed criminal charges against Steeprow to "cover-up the illegal arrest and imprisonment." *Id.* ¶ 34.

During Steeprow's trial for the lewdness offense, the public defender assigned to him, defendant Richard Riehl, allegedly failed to investigate the facts surrounding his arrest. *Id.* ¶ 36. Furthermore, the arrest report contained false statements designed to make the crime he was charged with seem particularly despicable and scandalous. *Id.* ¶ 35. Steeprow alleges that the public defender conspired with the prosecutor and Torpy to prevent Steeprow from determining facts that would have allowed him to defend himself and to deny his efforts to enforce his right to a speedy trial. *Id.* ¶ 37. These conspiracies were, according to Steeprow, intended to pressure him to leave the State of Florida. *Id.* ¶ 37. Ultimately, the state dropped the charges against Steeprow, due to the "overpowering evidence" in his favor. *Id.* ¶ 37. However, "the arresting officer, the court[,] and the Public Defender continue to restrict [Steeprow's] right to freedom by demanding [that Steeprow] 'stay out of public places.'" *Id.* ¶ 37.

Gregory Hansen, an attorney with Torpy's former law firm, defendant Frese, Nash & Hansen, P.A., has allegedly bragged to people about how his firm was able to conspire with the

prosecutor and the public defender against Steeprow. *Id.* ¶ 37. In addition, Steeprow claims that Hansen and others at the firm conspired to deny Steeprow of his "right to 'due process of law' in a civil action involving race hate in a public place" and an automobile accident. *Id.* ¶ 37.[1] Moreover, Hansen and his cohorts have effected the dismissal of other civil lawsuits involving Steeprow "[f]or frivolous reasons." *Id.*

As a result of the campaign of harassment being waged against him, Steeprow seldom leaves his home. *Id.* ¶ 38. He contends that he is often subjected to frivolous traffic stops and to having a spotlight shown on his house late at night by law enforcement officers. *Id.* Although the complaint is peppered with extraneous facts throughout, these are the primary allegations that form the basis for Steeprow's fifteen counts of civil rights violations and state law torts.

Count I alleges a 42 U.S.C. § 1983 (section 1983) civil rights violation based on an arrest. Count II alleges a section 1983 violation based on detention and confinement. Count III alleges a state law civil conspiracy. Count IV alleges a conspiracy to commit the state law tort of malicious prosecution. Count V alleges a section 1983 violation based on a failure to prevent a conspiracy to cause a false conviction. Count VI alleges a section 1983 violation based on a conspiracy to cause a false arrest and confinement. Count VII alleges a state law conspiracy to engage in malicious abuse of process. Count VIII alleges a conspiracy to deny Steeprow's equal protection rights. Count IX alleges a conspiracy to slander Steeprow. Counts X and XI allege the state law torts of battery and intentional infliction of emotional distress, respectively. Count XII alleges a violation of the Florida Civil Rights Act. Count XIII alleges a conspiracy to commit private racial

---

[1] Steeprow identifies this case as "Case No.: 05-2003-CA-062069" and claims that it is pending before Judge Moxley of the Brevard County Circuit Court.

discrimination. Counts XIV and XV are "reserved for" the state law torts of negligence and negligent infliction of emotional distress, respectively.[2]

### III. STANDARD OF REVIEW.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Federal Rule of Civil Procedure 12(b)(6) is the basis for motions to dismiss for failure to state a claim. "The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

In *pro se* actions, courts construe the complaint more liberally than it would formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). However, courts are not required to accept as true broad legal conclusions set forth as factual allegations. *Assoc. Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

### IV. ANALYSIS.

A. *Counts I-II: Section 1983 Violations For Arrest, Detention, and Confinement.*

---

[2] At pages one and two of the amended complaint, Steeprow lists seventeen claims he purports to bring in this case. Doc. No. 67. While these claims appear to be related to the fifteen counts he sets out with specificity later in his complaint, they do not precisely correspond with each other. This analysis liberally interprets the pleadings as encompassing all of the federal claims Steeprow's allegations could possibly support.

Steeprow alleges that his arrest, detention, and confinement for revealing a wire tap, which were the subjects of the earlier case in this Court, constituted a violation of 42 U.S.C. § 1983. Doc. No. 67 ¶¶ 39-51. A section 1983 cause of action consists of two primary elements: (1) an act or omission which deprives the plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States and (2) that the act or omission was undertaken by a person acting under color of law. 42 U.S.C. § 1983; *Walker v. Briley*, 140 F. Supp. 2d 1249, 1256 (N.D. Ala. 2001).

In support of this claim, Steeprow cites the following alleged facts: (1) Torpy filed false charges against him; (2) Torpy threatened to have Steeprow arrested if he would not drop the fraud case against Kahook; (3) Torpy said that he could obtain a conviction against Steeprow due to the biased Brevard County jury pool; (4) Torpy and Beatty tampered with evidence (it is unclear in what proceeding this tampering occurred); and (5) Torpy and Beatty had him arrested.

This claim re-alleges the section 1983 action that Steeprow pursued in his earlier case. As mentioned above, this Court granted Steeprow permission to re-file his complaint only in the event that his conviction for revealing the wiretap was overturned. Here, Steeprow fails to allege that his conviction was overturned.

Moreover, Steeprow has failed to state a claim on which relief could be granted. Steeprow essentially alleges a conspiracy among Torpy, Beatty, law enforcement officers, and the courts to trump up charges and convict him. To establish a *prima facie* case of conspiracy to violate rights protected by section 1983, a plaintiff must show that the defendants reached an understanding to violate the plaintiff's rights. *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) *overruled on other grounds by Whiting v. Traylor*, 85 F.3d 581, 584 n.4 (11th Cir. 1996). "Governmental

entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation." *Farred v. Hicks*, 915 F.2d 1530, 1532-33 (11th Cir. 1990) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). In addition, "[f]or purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

In his complaint, the only facts Steeprow alleges that support a section 1983 conspiracy are that Torpy and Beatty threatened to file and did file false charges against him. Steeprow does not allege, let alone "plead in detail," the contours of any relationship between Torpy and Beatty or any other defendants. *Id.* Moreover, Steeprow does not explain the manner in which any "policy or practice" of the government officials or entities he names as defendants contributed to this alleged civil rights violation. *Farred*, 915 F.2d at 1532-33. Finally, other than alleging that Torpy and Beatty conspired with their governmental co-defendants in a conclusory manner, Steeprow fails to allege that Torpy and Beatty acted under "color of law." *See Mershon v. Beasley*, 994 F.2d 449, 452 (8th Cir.1993) (holding that even where evidence demonstrated that a private party had "multiple contacts" with a prosecutor, the evidence was insufficient to establish a section 1983 conspiracy like the one Steeprow alleges). Therefore, Counts I and II of Steeprow's amended complaint must be dismissed.

B.  *Count V: Neglecting to Prevent a Conspiracy.*

In his fifth count, Steeprow claims that the Brevard County Sheriff's Office and other defendants neglected to prevent a conspiracy to violate his civil rights, which is actionable under section 1983. Specifically, Steeprow alleges that the Sheriff's Office, cooperating with Torpy and

Beatty, "failed to instruct, supervise, control, and discipline" Deputy David Fitch and that the presiding judges in his criminal trials failed to note the lack of evidence against him. Doc. No. 67 ¶¶ 70-72. Fitch allegedly placed flyers with an offensive and racist message printed on them on Steeprow's car, trespassed on Steeprow's property, and spread slanderous lies about Steeprow among his neighbors. *Id.* ¶ 70. Steeprow alleges further that Fitch was the officer who arrested him for lewdness on December 6, 2002. *Id.* ¶ 70.

Steeprow has not cited, nor can I find, any legal authority for the proposition that failure to prevent a conspiracy to violate civil rights is actionable.[3] The cause of action which Steeprow's allegations most closely fit is a pure section 1983 conspiracy action and vicarious liability based on the Sheriff's office's "policy or custom." *Farred*, 915 F.2d at 1532-33. Thus, Count V essentially re-alleges Count I of the complaint. And, as stated above, Steeprow neither explains the manner in which any "policy or practice" of the defendants contributed to this alleged civil rights violation, nor does he allege that Torpy and Beatty acted under "color of law" sufficiently to satisfy the heightened burden of pleading for section 1983 conspiracy claims. *Id.*; *Harvey*, 949 F.2d at 1133; *Mershon*, 994 F.2d at 452. Therefore, Count V of Steeprow's complaint must be dismissed.

    C.    *Count VI: Conspiracy to Cause False Arrest.*

Steeprow alleges that the defendants conspired to violate his civil rights by causing his false arrest and confinement. Doc. No 67 ¶¶ 76-83. Steeprow contends that his arrest on December 6,

---

[3] 42 U.S.C. § 1986 provides a cause of action for failing to prevent civil rights violations, as opposed to failing to prevent conspiracies to commit civil rights violations. However, there is no authority for the proposition that this section provides for liability on the sort of section 1983 "policy or practice" theory which Steeprow urges. To the extent that the complaint could, interpreted leniently, state a section 1986 claim, I address this in sub-section D of this order, and conclude that the complaint does not state a section 1986 claim.

2002, for lewdness, constituted a false arrest because the charges against him were fabricated by Torpy and other conspirators. *Id.* ¶ 79. Moreover, Steeprow alleges that he was harmed by having to stand in cold rain and suffered extreme pain as a result of the law enforcement officers' failure to provide him with pain medication. *Id.* ¶¶ 80-82.

A "false arrest" which amounts to a section 1983 violation is an arrest that a police officer lacks probable cause to make. *Caruso v. City of Cocoa*, 260 F. Supp. 2d 1191, 1204 (M.D. Fla. 2003). Furthermore, alleging that the basis of an arrest was improper because the private actors who filed charges did so fraudulently is not sufficient to state a cognizable section 1983 claim–it is whether the arresting officer had probable cause that controls. *Howard v. Lemmons*, 547 F.2d 290 n.2 (5th Cir. 1977). For example, in *Howard*, the plaintiff brought a false arrest claim based on the allegation that the police formed probable cause to arrest him based on false affidavits that private citizens filed with a district attorney. *Id.* The court held that the plaintiff failed to state a claim under section 1983. *Id.*

In the present case, the entire basis for Steeprow's allegation that the Sheriff's Office lacked probable cause for his arrest is based on the logic that, because the basis for the arrest was trumped up by Torpy and his alleged cohorts, no actual probable cause could have existed. Faced with an identical argument, the *Howard* court held that the plaintiff failed to state a claim under section 1983. Accordingly, Count VI of Steeprow's amended complaint is subject to dismissal.

D. *Count VIII: Conspiracy to Deny Equal Protection.*

In his eighth count, Steeprow alleges that the defendants conspired to violate his constitutional right to equal protection under the law. Doc. No. 67 ¶¶ 125-36. In support of this count, Steeprow alleges that he attempted to report terrorist activities to the FBI, but that the

agency ignored his information and arrested him. *Id.* ¶ 126. Next, Steeprow alleges that he was arrested for disclosing false information regarding a terrorist who Torpy protected. *Id.* ¶ 127. He further alleges that Torpy orchestrated Steeprow's arrest and prosecution for providing false information to the authorities. *Id.* ¶ 127.[4] Next, Steeprow explains that the Brevard County Sheriff's Office failed to respond when he reported the "race hate incident" of October 24, 2000, in which two men allegedly attacked him and left racist flyers on his car. *Id.* ¶ 128. Steeprow claims that a prosecutor discriminated against him by failing to charge attorney Michael Bross for illegally recording Steeprow, when the prosecutor had charged Steeprow with the same crime. *Id.* ¶ 129. In addition, Steeprow alleges that Torpy orchestrated a criminal case against him, that the judges and law enforcement officials involved in the case conspired with Torpy, and that the FBI discriminated against him by refusing to investigate when Steeprow informed the agency of his false arrest. *Id.* ¶¶ 131-36. Steeprow contends that all of these alleged facts support a claim that the Defendants violated his right to equal protection of the laws.

The most accommodating interpretations of Count VIII are as a claim for relief pursuant to 42 U.S.C. § 1985(3) (section 1985(3)), which governs conspiracies to deny equal protection, or 42 U.S.C. § 1986 (section 1986), which governs the failure to prevent such a conspiracy. In order to state a claim under section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving any person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) harm the conspiracy caused. *Trawinski v. United Tech.*, 313 F.3d 1295, 1299 (11th Cir.

---

[4] It is unclear whether this Count refers to Steeprow's arrest for "illegal disclosure of a wire tap" or if it refers to a different arrest. Regardless, as the analysis explains, Steeprow fails to state a claim.

2002). Section 1985(3) only applies to conspiracies "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 33, 101-02 (1971)). A claim under section 1986 involves three elements: (1) a person who has the power to prevent a section 1985 violation (2) with knowledge that the violation is about to occur (3) neglects to prevent the violation. *Id.*

The facts Steeprow alleges invite an inquiry into when a failure to investigate a reported crime or a failure to prosecute a case can constitute an equal protection violation. The Supreme Court has explained that the requirements for a selective-prosecution claim "draw on ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quotation omitted). Likewise, while law enforcement officers generally do not have a constitutional duty to protect particular citizens, they may not "selectively deny [their] protective services to certain disfavored minorities without violating the Equal Protection Clause." *Park v. City of Atlanta*, 938 F. Supp. 836, 843 (N.D. Ga. 1996) (quoting *DeShaney v. Dep't of Social Serv.*, 489 U.S. 189, 843 (1989)) *reversed on other grounds by* 120 F.3d 1157.

In *Park*, the plaintiff, the owner of a Korean grocery store in Atlanta which was destroyed by a racially-motivated mob during a riot, alleged both a section 1985(3) claim and a section 1986 claim based on the police's failure to prevent the attack on his store. *Id.* The district court granted summary judgment in favor of the defendants on both claims. *Id.*

On appeal, the United States Court of Appeals for the Eleventh Circuit upheld the district court's ruling on the section 1985(3) claim, reasoning that there was no evidence indicating a conspiracy between law enforcement officers and the mob, and holding that the mere failure to

prevent the attack or respond to reports of the crime (the police in that case were poised to disperse tear gas among the crowd, but declined to do so) could not support a section 1985(3) claim. *Park v. City of Atlanta*, 120 F.3d 1157, 1161-62 (11th Cir. 1997). However, the court did reverse the district court's decision regarding the section 1986 claim, reasoning that "the mob's screams of 'Kill the Koreans!'" put the police on notice of, and, therefore, in a position to prevent, the mob's conspiracy to commit a section 1985 violation. *Id.*

In the present case, Steeprow's section 1985(3) and section 1986 claims rest on the allegations that law enforcement officers: (1) refused to investigate one racially-motivated incident (the alleged "race hate crime"); (2) refused to investigate his reports of terrorist activities based on his race; and (3) selectively prosecuted him on the basis of his race. Doc. No. 67 ¶¶ 125-36. First, Steeprow does not explain how the failure to investigate his reports of terrorist activity harmed him–he does not, for example, allege that any terrorist activity was aimed at him or at a racial minority group. Therefore, this allegation is insufficient to support a crucial element of a section 1985(3) claim. *Trawinski*, 313 F.3d at 1299. Likewise, his selective prosecution allegation does not allege that he was singled out because of his race. Steeprow only alleges that Torpy filed false charges against him while threatening that prevailing racist attitudes in Brevard County would doom Steeprow in court. These allegations do not establish a 1985(3) conspiracy, they simply re-allege Steeprow's malicious prosecution claim. *Id.*; *see Harvey*, 949 F.2d at 1133. Thus, the only one of Steeprow's three allegations that could conceivably sustain his section 1985(3) claim is the failure to investigate the "race hate incident."

With respect to the "race hate incident," Steeprow fails to allege that any of the defendants actually conspired with the perpetrators of the alleged crime. His claim is only that the defendants'

failure to investigate the crime constituted a violation of equal protection. Thus, like *Park*, Steeprow's allegations fail to state a conspiracy to violate equal protection under section 1985(3). *Park*, 120 F.3d at 1161-62.

Finally, Steeprow's section 1986 claim rests on the allegation that private actors committed the "race hate crime" and the police neglected to prevent it. However, as *Park* instructs, a plaintiff must explain the manner in which the police had some notice that the crime was going to occur to satisfy the element of being in a position to prevent an equal protection violation. *Id.*; 42 U.S.C. § 1986. Steeprow alleges a *failure to react to* a section 1985 violation, rather than a *failure to prevent* a section 1985 violation. Therefore, Steeprow fails to state a section 1986 claim. Thus, Count VIII of the plaintiff's complaint must be dismissed.

E. *Count XIII: Conspiracy to Commit Racial Discrimination.*

In this count, Steeprow alleges that the Torpy instigated a conspiracy to discriminate against him on the basis of his race in violation of 42 U.S.C. § 1981 (section 1981), which governs discrimination by private actors. In support of this count, Steeprow repeats his factual allegations that: (1) Torpy threatened that he could obtain a conviction against Steeprow in Brevard County due to the racist jury pool; (2) Torpy referred to Steeprow as a "stupid black man"; (3) Torpy's client, apparently in either the underlying civil dispute with Kahook or the bankruptcy court proceeding, informed a jury that Steeprow was "racist and hated all white people"; (4) at his arrest for lewdness, Deputy Anthony Brannon singled out Steeprow to arrest when "several whites" were also at the arrest scene; (5) the Sheriff's office failed to prevent the "race hate attack" of October 24, 2000. Doc. No. 67 ¶¶ 135, 157-164.

Section 1981 creates a right to be free from racial discrimination in the course of the private activities of (1) making and enforcing contracts, (2) bringing and participating in lawsuits, and (3) protecting property rights. Section 1983 provides a cause of action for situations in which a plaintiff's section 1981 rights have been violated. In order to state a section 1981 claim of discrimination, a plaintiff must allege that he or she was a victim of disparate treatment, *i.e.*, that other people, not members of the plaintiff's protected class, were treated differently with respect to one of the activities articulated in section 1981. *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 293 & n.1 (11th Cir. 1988). Merely alleging "ill treatment" with no reference to discriminatory intent does not satisfy this requirement. *Faulk v. City of Orlando*, 731 F.2d 787, 790 (11th Cir. 1984).

In the present case, Steeprow alleges that Torpy and others threatened that they could take actions to harm him due to a racist societal climate. He also alleges that Torpy and others uttered racist remarks at various times. Steeprow does not offer any allegation to support the essential element that he was discriminated against because of his race–he does not allege that Torpy or any other actor, for example, refused to hire him, refused to sell him a good or service, or impeded his ability to utilize the courts. *Zaklama*, 842 F.2d at 293. What Steeprow alleges is the sort of "ill treatment" that, though repugnant, cannot serve as the basis for a section 1981 claim. *Faulk*, 731 F.2d at 790. Moreover, to the extent the Court could interpret Count XIII as alleging some form of actionable discrimination on the basis of race, it merely echoes the civil rights violations he claims in his other Counts. Therefore, the Court will dismiss Count XIII of Steeprow's complaint.

E.   *Steeprow's Remaining State Law Claims.*

This Court's jurisdiction in this case is based on the fact that a number of Steeprow's claims raise federal questions. As explained above, all of Steeprow's federal question claims

should be dismissed. When a federal district court's exercise of jurisdiction is based on a federal question, and the court dismisses all of a plaintiff's federal claims, it is appropriate for that court to decline to exercise jurisdiction over any of the plaintiff's supplemental state law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). Accordingly, Steeprow's remaining state law claims are dismissed.

## V. CONCLUSION.

For the reasons stated herein, the plaintiff's federal claims are **DISMISSED with prejudice**. The claims the plaintiff brings pursuant to Florida state law are **DISMISSED without prejudice**.

**ORDERED** in Orlando, Florida on May 24, 2005.

                                                GREGORY A. PRESNELL
                                                UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party